Filed 9/8/21  P. v. Bergman CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081864 |
| Plaintiff and Respondent, | (Kern Super. Ct. No. BF181070A) |
| v. | |
| DYLAN CHRISTOPHER BERGMAN, | OPINION |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Dylan Christopher Bergman pleaded guilty to six felony counts arising out of a domestic violence incident and was sentenced to state prison. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS[1]

On May 13, 2020, officers from the Bakersfield Police Department responded to an apartment on a report of a domestic violence incident in progress. When they arrived, a male reported that his mother was punched in the face by defendant. He said his mother had significant bleeding. He ran out of the apartment, but defendant prevented his mother from doing so, and she was still inside with defendant. The officers were advised by dispatch that defendant had a prior arrest for a firearms offense, and he was hostile toward law enforcement.

The officers stood outside the apartment's door and heard a man and woman arguing inside. They knocked and identified themselves, and the arguing stopped. The door was unlocked, and the officers were able to slightly open it. Someone inside the apartment immediately slammed it shut and turned the deadbolt.

The officers believed there were exigent circumstances to support an emergency entry and kicked out the bottom of the door. They could see the lower part of defendant's body, and repeatedly ordered him to exit the apartment. Defendant failed to comply.

Defendant shouted profanity and racial slurs at the officers. A small dog ran out of the broken lower half of the door, and it was covered with blood but not hurt. The officers believed someone inside the apartment was seriously injured.

---

[1] The following facts are from the preliminary hearing.

Additional units arrived, and two officers entered the apartment through the exterior patio door to look for the victim. They saw defendant at the front door, still yelling at the other officers. The officers drew their weapons and ordered defendant to get down on the ground. Defendant refused and instead went into a bathroom.

The officers opened the front door for the other officers to enter. They searched the apartment for the victim, could not find her, and saw a significant amount of blood on a couch, the floor, and a towel. They were concerned she was in the bathroom with defendant.

An officer tried to negotiate with defendant to open the bathroom door. Defendant refused, shouted profanities, and said the police needed a warrant, and he would not comply with their orders. The officer called out for the victim by her first name, but no one responded. Defendant said she was not there, and the police made a mistake and had to leave.

Since the officers initially heard a male and female arguing behind the front door, they believed a female victim was being held in the bathroom against her will. They decided to breach the bathroom door by kicking it and using a pry bar, but the door had been barricaded. An officer pried open a small portion of the door and saw a woman in the bathroom. She looked in distress, and there was intense swelling and a significant amount blood on her face.

An officer used a sledgehammer and finally breached the bathroom door. Defendant was trying to hold the door closed with his feet, and the police pulled him through the doorway. Defendant actively resisted the officers.

Defendant was removed from the bathroom, but he continued to resist. He kicked an officer in the abdomen, and another officer punched him. Yet another officer discharged a Taser on him. Defendant was finally restrained on the floor by six officers. In the meantime, another officer rescued the victim from the bathroom.

The victim was in severe distress. Her face was swollen from the right eyebrow down to the right jaw, there were injuries to her mouth, and she had a black eye on the right side. Her hair and shirt were saturated with blood.

The victim reported that defendant was her husband. He grabbed her by the hair, slapped her, and punched her in the face. She lost consciousness and fell on the floor. Defendant grabbed her arm, took her into the bathroom, and told her to clean up. She said she complied with his orders because she was afraid. She was in the bathroom when she heard the officers at the front door. Defendant told her to stay quiet, and he barricaded the door to keep them out.

The victim was examined at a hospital and diagnosed with a broken nose, a black eye on the right side, a split lip, bruises on her arm, and a "brain bleed."

## PROCEDURAL BACKGROUND

On June 12, 2020, an information was filed in the Superior Court of Kern County charging defendant with count 1, corporal injury to a spouse (Pen. Code, § 273.5, subd. (a));[2] count 2, kidnapping (§ 207, subd. (a)); count 3, dissuading a witness/victim to a crime from attending and/or giving testimony at a court proceeding (§ 136.1, subd. (c)(1)); count 4, resisting executive officers by force or violence (§ 69); count 5, false imprisonment (§§ 236, 237, subd. (a)); and count 6, battery with serious bodily injury (§ 243, subd. (d)). As to all counts except count 4, it was alleged that defendant personally inflicted great bodily injury (§ 12022.7, subd. (e)).

**Plea and sentencing**

On September 3, 2020, defendant pleaded no contest to the six counts and admitted the great bodily injury enhancements, pursuant to an "open plea" where the maximum sentence was 16 years.

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

4.

On October 1, 2020, the court conducted the sentencing hearing. The victim addressed the court and said that while defendant did something bad, he had "the biggest heart," and she needed him.

The court reviewed the probation report and stated defendant committed significant acts of violence because the victim suffered a broken nose, broken right sinus, and internal bleeding at the back of her head. Defendant had also committed prior acts of abuse against this victim, and this case marked the fourth conviction based on this victim. Defendant previously failed to complete a court-ordered domestic violence program and comply with the other terms of probation in the prior cases.

The court found the abuse in this case continued after defendant's arrest and incarceration because he called the victim from jail, tried to dissuade her from testifying against him, and then belittled her when she appeared in court. The calls also violated the criminal protective order that was issued in this case, and the court found defendant showed no remorse for his actions.

The court found defendant was statutorily ineligible for probation and, even if he was eligible, it would deny probation because of his extensive record and failure to comply with the terms of his prior probationary periods. The court imposed an aggregate sentence of 13 years eight months in prison, based on the upper term of eight years for count 2, plus five years for the great bodily injury enhancement; and a consecutive term of eight months (one-third the midterm) for count 4; with concurrent terms for counts 1 and 3; and stayed the terms imposed for counts 5 and 6 pursuant to section 654.

The court ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)) and suspended the $300 parole revocation fine (§ 1202.45), with victim restitution in an amount to be determined (§ 1202.4, subd. (f)). The court also imposed a total of $180 in criminal conviction assessments (Gov. Code, § 70373; $30 per count); and $240 in court operations assessments (§ 1465.8; $40 per count).

On October 1, 2020, defendant filed a timely notice of appeal.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on January 26, 2021, we invited defendant to submit additional briefing. He has failed to do so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.